UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN TOOHIG, | ) | CASE NO. 1: 10 CV 657 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| THE PNC FINANCIAL SERVICES | ) | |
| GROUP, INC., et al., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |

This matter is before the Court on a Motion to Dismiss and Motion to Strike filed by Defendants the PNC Financial Services Group, Inc. ("PNC"), PNC Bank, N.A. ("PNC Bank"), and National City Corporation Amended and Restated Management Severance Plan (the "Management Severance Plan" or "Plan") (collectively "Defendants"). (ECF # 8.) For the reasons set forth below, the Motion to Dismiss is GRANTED, and the Motion to Strike is DENIED.

## I. BACKGROUND[1]

On March 29, 2010, Plaintiff filed the Complaint against Defendants attempting to set forth claims for breach of contract (Count I) and, alternatively, ERISA Denial of Benefits pursuant to 29 U.S.C. § 1132(a)(1)(b) (Count II). (ECF # 1.) According to Plaintiff, he was a Vice President in the internal audit division of National City Corporation ("National City"), which meant that he was a participant in the company's Management Severance Plan. (*Id.* at ¶ 9.) Among other things, the Management Severance Plan addresses the circumstances surrounding employment if a "Change in

---

[1] The facts as stated in this Memorandum Opinion and Order are taken from the Complaint and should not be construed as findings of this Court. In a motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party, in this case, the Plaintiff.

Control" takes place. (*Id.* at ¶ 8.)

Plaintiff asserts that, if a Change in Control occurs, the Management Severance Plan allows the participant to terminate employment with the surviving entity, while retaining the right to severance benefits under certain circumstances. (*Id.* at ¶ 11.) These circumstances include when the surviving entity requires the participant to have "his principal location of work changed, to any location which is in excess of 50 miles from the location thereof immediately prior to the Change in Control."[2] (*Id.*)

Plaintiff alleges that, on or about December 31, 2008, Defendants PNC acquired National City, an event that constitutes a "Change in Control" as defined in the Management Severance Plan. (*Id.* at ¶ 12.) Plaintiff claims that, thereafter, the internal audit division for which he worked was to be relocated to Pittsburgh, Pennsylvania. (*Id.* at ¶ 13.) Plaintiff states:

> In March 2009, [Plaintiff] was informed by Jim Higgins, his interim supervisor, that he would be required to spend eighty percent (80%) of his working time in Pittsburgh and that he would be expected to relocate to Pittsburgh. Mr. Higgins also told [Plaintiff] that he could wait until the end of the 2009 school year before relocating and, in the interim, he could commute to Pittsburgh. Finally, Mr. Higgins told [Plaintiff] that he was investigating whether PNC would make a relocation package available to him. At no point did Mr. Higgins suggest to [Plaintiff] that PNC would assign him new responsibilities that would allow him to work principally in Cleveland or within 50 miles of Cleveland.

(*Id.* at ¶ 14.) Plaintiff asserts that, because PNC was requiring him to have the principal location

---

[2] In particular, Article 3.2, within the provision pertaining to "Termination Following a Change in Control" provides:

> The Participant may terminate employment with the Surviving Entity during the Protection Period with the right to severance benefits as provided in Article 4 upon the occurrence of . . . the following . . . : (b) The Surviving Entity of the Participant requires the Participant to have is principal location of work changed, to any location which is in excess of 50 miles from the location thereof immediately prior to the Change in Control.

(ECF # 1, Ex. 1 at 7-8.)

2

of work relocated more than fifty miles from Cleveland, he was entitled to resign and collect severance benefits under the Management Severance Plan. (*Id.* at ¶ 15.)

On March 16, 2009, Plaintiff submitted a resignation letter, requesting severance benefits under the Management Severance Plan. (*Id.* at ¶ 16.) Plaintiff likewise secured employment outside of PNC. (*Id.* at ¶ 17.) Plaintiff states that, on March 30, 2010, after he had already accepted alternate employment:

> Mr. Higgins' [sic] delivered a memorandum to [Plaintiff] explaining that [Plaintiff] had had a "misunderstanding" regarding the requirement that he move to Pittsburgh. Mr. Higgins went on to explain that, though most of his current work would be moved to Pittsburgh, PNC was not requiring [Plaintiff] to move to Pittsburgh. Mr. Higgins' memorandum made clear that PNC did not consider [Plaintiff's] resignation to be a termination for "good reason" and that it did not intend to pay him severance under the Management Severance Plan.

(*Id.* at ¶ 18.) Despite submitting several claims for his entitlement to such, Plaintiff did not receive severance benefits. (*Id.* at ¶¶ 19-21.)

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a defendant to test the legal sufficiency of complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the

entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complai ;pnt must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). It is with this standard in mind that the instant Motion to Dismiss must be decided.

### III. DISCUSSION

This Court first examines the arguments set forth in Defendants' Motion to Dismiss. After doing so, the Court shall consider the arguments set forth in Defendants' Motion to Strike.

#### A. Motion to Dismiss

#### 1. Breach of Contract (Count I)

Defendants first move to dismiss Plaintiff's claim for breach of contract in Count I of the Complaint. (ECF # 8 at 2.) Defendants claim that, because the Management Severance Plan is an employee welfare benefit plan governed by ERISA, and the breach of contract claim relates to and

4

seeks benefits under the ERISA plan, the claim is preempted by ERISA. (*Id.*) On this basis, Defendants move this Court to dismiss Count I of the Complaint. (*Id.*)

In order to determine whether a severance plan falls under ERISA, this Court must examine whether (1) the employer has discretion over the distribution of benefits and (2) there are ongoing demands on an employer's assets. *See Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 848 (6th Cir. 2006). Simple or mechanical determinations over the distribution of benefits do not satisfy the first factor set forth above and, as such, are not ERISA plans. *See Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 616 (6th Cir. 2002). In contrast, if the plan requires an employer to "analyze each employee's particular circumstances in light of the appropriate criteria," the plan falls under ERISA. *See id.* (*quoting Sherrod v. General Motors Corp.*, 33 F.3d 636, 638-39 (6th Cir. 1994)). As to the second factor, namely the ongoing demands on an employer's assets, the Court looks to whether the plan requires the employer to make payments on a regular basis, as opposed to a lump sum payment. *See id.*

Defendants contend that the Plan at issue provides the employer with discretion over the distribution of benefits, as well as places ongoing demands on an employer's assets. (ECF # 8 at 8-9.) Defendants argue:

> As to the first factor, the Plan requires the Committee to exercise discretion over the distribution of benefits in not one but two respects. The Committee must determine a particular employee's eligibility for severance benefits. The Committee also has to determine the amount of those benefits. . . . [O]nly employees who are involuntarily terminated without cause or who voluntarily resign under certain circumstances are entitled to severance under the Plan. The Plan requires the Committee as administrator to conduct an individualized analysis of the reasons for each employee's separation from employment. The Plan also requires the Committee to compute the Incentive Pay required (as defined in the Plan) of each employee to calculate the total amount of severance pay owed.

5

(*Id.* (citation omitted).) Defendants assert that, based upon these provisions, the Plan is an employee welfare benefit plan governed by ERISA. (*Id.* at 8.)

The Court finds that, based upon the plain language of the Plan, the Committee has substantial discretion over the distribution of benefits provided thereunder. Article 14 of the Plan, entitled "Administration," provides that the Plan is to be administered by the Committee, which has full power and authority to interpret, construe, and administer the Plan. (ECF # 1, Ex. 1 at 12.) It specifies that, in addition to the general interpretations and constructions of the Plan, the Committee is charged with oversight of the actions made thereunder, including the timing, form, and amount[3] or recipient of any payment to be made under the Plan. (*Id.*) Further, the Committee's determinations and actions under the Plan are binding and conclusive on all persons for all purposes. (*Id.*) The Court finds that this provision alone confers substantial discretion over the distribution of benefits so as to satisfy the first factor set forth above.

As to the second factor, whether there are ongoing demands on an employer's assets, the Court likewise finds it to be satisfied. Here, the Plan does not call for a lump sum payment. At a

---

[3] The Plan provision covering "Incentive Pay," provides:

> "Incentive Pay" means an amount equal to the sum of (a) the higher of (i) the highest aggregate annual incentive payment (excluding income realized from the exercise of stock options, any benefits received from being granted stock options or shares of restricted stock, income realized from the sale of restricted stock and any profit sharing, matching contributions or discretionary contributions made under any savings plan but including, without limitation, awards pursuant to the Management Incentive Plan) awarded for either of the two calendar years immediately preceding the year in which the Effective Date occurs or (ii) the target award for the individual for the year in which the Effective Date occurs and (b) the higher of (i) the highest incentive payment awarded pursuant to the Long Term Plans for either of the plan cycles ending in the two calendar years immediately preceding the year in which the Effective Date occurs or (ii) the target award for the individual pursuant to the Long Term Plans for the plan cycle ending in the calendar year in which the Effective Date occurs. For purposes of this paragraph 2.1(o), "payment" includes moneys paid as well as any portion of any award deferred.

(ECF # 1, Ex. 1 at 6.)

minimum, the "Protection Period"[4] calls for payments to be made over the course of fifteen months. (ECF # 1, Ex. 1 at 7.) The biweekly installments over time as set forth in the Plan language are sufficient to establish that the demands on the employer's assets are ongoing. Because the employer has discretion over the distribution of benefits and there are ongoing demands on the employer's assets in these circumstances, the Court finds that the Plan at issue indeed falls under ERISA.

ERISA preempts state laws that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). Here, the breach of contract claim contained in Count I of the Complaint relates to and seeks benefits under an ERISA Plan. As such, the claim is preempted, and Defendants' Motion to Dismiss Count I of the Complaint is GRANTED.

### 2. ERISA Denial of Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(b) (Count II)

Defendants next move to dismiss Plaintiff's claim for ERISA Denial of Benefits pursuant to 29 U.S.C. § 1132(a)(1)(b). (ECF # 8 at 2.) More specifically, Defendants argue that, because participants and beneficiaries who assert an ERISA 502(a)(1)(B) claim may recover only against the Plan, Plaintiff's attempt to assert a claim against PNC and PNC Bank in Count II of the Complaint must be dismissed. (*Id.* at 12.) Plaintiff does not dispute that Count II of the Complaint can be dismissed as to Defendants PNC and PNC Bank. (ECF # 23 at 5, n.1.) Accordingly, Defendants' Motion to Dismiss Count II of the Complaint as it applies to Defendants PNC and PNC Bank is GRANTED. Count II of the Complaint remains pending against the Plan. Having no remaining claims against them, PNC and PNC Bank are hereby DISMISSED as Defendants in the

---

[4] The Plan language states, the "Protection Period means the period of time commencing on the Effective Date and continuing through to the fifteenth month anniversary of the Implementation Date." (ECF # 1, Ex. 1 at 7.)

7

instant case.

### B. Motion to Strike

The Court now turns to the pending Motion to Strike. Defendants move to Strike the Jury Demand in this case on the ground that jury trials are not available under ERISA. (ECF # 8 at 13.) This Court has thoroughly considered the Motion and finds that, pursuant to Rule 39(c)(1), the sole remaining claim in the case, namely Count II against the Plan, shall be tried to an advisory jury. On this basis, the Motion to Strike is DENIED.

### IV. CONCLUSION

For the reasons set forth above, the Motion to Dismiss is GRANTED. (ECF # 8.) Having no remaining claims against them, Defendants PNC and PNC Bank are hereby DISMISSED from the instant case. The sole remaining claim, Count II against the Plan, shall be tried to an advisory jury. As such, the Motion to Strike is DENIED. (*Id.*)

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATE November 19, 2010