IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEAN TOOHIG, | ) CASE NO. 1:10 CV 657 |
| Plaintiff, | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| NATIONAL CITY CORPORATION AMENDED AND RESTATED MANAGEMENT SEVERANCE PLAN, | ) MEMORANDUM OPINION |
| Defendant. | ) |

Plaintiff Sean Toohig ("Toohig") claims that Defendant National City Corporation Amended and Restated Management Severance Plan ("the Plan") wrongfully denied him severance benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). This matter is before the Court on Defendant's Motion for Judgment on the Administrative Record. (Docket #38). For the reasons set forth below, Defendant's Motion is GRANTED.

### Background

In May 2004, Plaintiff began his employment with National City Bank ("NCB") where he served as a Vice President, Senior Auditor in the Internal Audit Division in Cleveland, Ohio. (Complaint ¶¶ 6, 7, 9, 11). On December 31, 2008, NCB became a wholly owned subsidiary of

The PNC Financial Services Group, Inc. ("PNC"). (*Id. at* ¶ 2). By virtue of his position with NCB and then PNC, Plaintiff was eligible to participate in the National City Corporation Amended and Restated Management Severance Plan (the "Plan"). (Declaration of Kerry A. Allen, Exh. A, Administrative Record ("AR") 1-15).

In March 2009, Plaintiff had conversations with his supervisor, General Auditor Jim Higgins, regarding Plaintiff's role in the wake of the PNC acquisition of National City which Plaintiff summarized in an email exchange on March 13, 2009. (AR 17, 21, 23).

On March 16, 2009, Plaintiff submitted his letter of resignation, effective April 10, 2009, and demanded severance benefits under Article 3.2(b) of the Plan asserting that PNC was requiring him to move from Cleveland to Pittsburgh. (AR 22). Article 3.2(b) provides that a participant under the Plan is entitled to severance benefits if he is required "to have his principal location of work changed, to any location which is in excess of 50 miles from the location thereof immediately prior to the Change in Control." (AR 8 § 3.2(b)). When PNC acquired NCB on December 31, 2008 it constituted a "Change in Control" under the plan. (AR 2-3 § 2.1(d)). The Plan designates the Compensation and Organizational Committee of the Board of Directors (the "Committee"), or another committee appointed by the Board of Directors, to administer the Plan. (AR 5 § 2.1(e)). The Committee is vested with the discretionary authority to interpret, construct, and administer the Plan including questions of timing, form, amount, or recipient of any payment made under the Plan. (AR 12 § 14). The Plan requires that the Committee exercise its discretion by engaging in a case-by-case review of each employee's circumstances to determine eligibility for severance benefits. (AR 9 § 5). Article 5 of the Plan also sets forth a detailed claim and review procedure. (*Id.*).

2

On March 30, 2009, Plaintiff received a memorandum from Mr. Higgins informing Plaintiff of the misunderstanding of their prior discussion, informing him that he was not required to move to Pittsburgh and could continue to work in Cleveland. (AR 23). The memorandum also stated that PNC would not consider Plaintiff's resignation to be termination for "good cause" and would not pay him severance benefits if he did resign. (*Id.*). In a letter to Mr. Higgins on March 31, 2009, Plaintiff confirmed his intentions to resign and asked Mr. Higgins to reconsider his severance benefits decision. (AR 24). On April 2, 2009, Mr. Higgins confirmed in a letter that PNC would not pay severance benefits if Plaintiff resigned. (AR 25).

On April 10, 2009, Plaintiff resigned his employment. (AR 19). Plaintiff then submitted a claim to the Committee for severance under Article 3.2(b) on May 4, 2009. (*Id.*). Committee met and determined that Plaintiff was not eligible for benefits under the Plan because of its determination that Plaintiff was not involuntarily terminated nor required to move his principal location of work, but instead was informed that he could remain in Cleveland. (AR 16-18). Plaintiff appealed the Committee's decision and on October 15, 2009, the Committee denied his second appeal. (AR 33-35).

Having exhausted the Plan's avenues for appeal, Plaintiff filed the current action on March 29, 2010. (Docket #1). Plaintiff's Complaint set forth claims for breach of contract and, alternatively, ERISA Denial of Benefits pursuant to 29 U.S.C. § 1132(a)(1)(b). (*Id.*). On November 19, 2010, the Court dismissed the breach of contract claim, dismissed PNC and PNC Bank, and found that the Plan is governed by ERISA. (Docket #28). On April 8, 2011, Defendant filed a Motion for Judgment on the Administrative Record. (Docket #38). Plaintiff filed an Opposition to Defendants' Motion for Judgment on the Administrative Record on May 11, 2011.

3

(Docket #41). Defendants filed a Reply in Support of its Motion for Judgment on the Administrative Record on May 17, 2011. (Docket #43). No additional briefs have been filed. Accordingly, the Motion before the Court is ripe for review.

### Standard of Review

A participant or beneficiary of an ERISA qualified plan may bring suit in federal court to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). It is uncontested that the Plan gave the Committee discretion to interpret the terms of the Plan and determine eligibility. The Plan states that "[t]he Committee shall have full power and authority to interpret, construe and administer this Plan and its interpretations and construction." (AR 12 § 14). Where an ERISA plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan" a court should not reverse a decision denying benefits unless the decision was "arbitrary and capricious." *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 115 (1989). The question of whether the Committee acted arbitrarily and capriciously in denying a claim for benefits is a question of law for the Court to decide. *Id.* "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action" and is "extremely deferential." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir.2003), *aff'd*, 554 U.S. 105 (2008). However, this deferential standard of review is not a "rubber stamp" on the decision of the Committee and the Court must review the "quantity and quality" of the evidence on each side. *Schwalm v. Guardian Life Insurance Co.*, 626 F.3d 299, 308 (6th Cir. 2010), citing *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir.2006).

In making its determination, the Court is confined to the record that was before the plan administrator in making its determination. *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609,

615 (6th Cir. 1998). When applying arbitrary and capricious review, Plaintiff bears the burden to demonstrate that the denial of benefits was arbitrary and capricious. *Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 865 (6th Cir.2007). A decision is not arbitrary and capricious if it is "the result of a deliberate, principled reasoning process" that is "supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir.2006), *aff'd sub nom. Met. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Thus, the decision of the administrator is upheld: (1) if it is the result of a deliberate principled reasoning process; (2) if it is supported by substantial evidence; and, (3) if it is based upon a reasonable interpretation of the plan. *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998). However, lack of substantial evidence, a mistake of law, bad faith, or a conflict of interest by the decision-maker, are factors that are indicative of arbitrary and capricious decisions. *Caldwell v. Life Insurance Co. of North America*, 287 F.3d 1276, 1282 (10th Cir. 2002). Furthermore, a decision based upon a selective review of the record or an incomplete record is arbitrary and capricious. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir.2005).

### Discussion

In this case, the Court is charged with the responsibility of determining whether the decision to deny Plaintiff severance benefits was arbitrary and capricious. The plan provides for severance benefits when "[t]he Surviving Entity of the Participant requires the Participant to have his principle location of work changed, to any location which is in excess of 50 miles from the location thereof immediately prior to the Change in Control." (AR 8 § 3.2(b)). The Committee found that Plaintiff was not required to move to Pittsburgh and still had the option to stay in

5

Cleveland. Therefore, Plaintiff did not qualify for benefits under this provision of the plan. (AR 16-18).

Plaintiff claims the Plan only requires the transfer of his actual work—auditing the capital markets—to a location more than 50 miles from Cleveland, with no requirement that he actually relocate. In contrast, the Committee clearly interpreted the Plan to require the transfer of his employment to Pittsburgh. When the terms of the plan are ambiguous, the Court must "grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms" requiring only that the "interpretation is rational." *Senzarin v. Abbott Severance Pay Plan for Employees of Kos Pharmaceuticals*, 361 Fed.Appx. 636, 640 (6th Cir. 2010), quoting *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995). The Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir.2004). Here, the Committee had discretion to interpret the plan and both interpretations that have been put forth are equally rational. Therefore, the Court must accept the Committee's rational interpretation of the Plan's language.

Additionally, Plaintiff alleges that an inherent conflict of interest exists because PNC both funds the severance benefits and evaluates the claims for those benefits. While arbitrary and capricious is a deferential standard of review, courts must evaluate potential conflicts of interest and consider them as factors in determining whether the decision to deny benefits was arbitrary and capricious. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005). For ERISA claims, a conflict of interest is present when the same entity both funds the plan and evaluates the claims. *Glenn,* 554 U.S. at 112. "In such cases, the arbitrary-and-capricious standard still applies,

6

but application of the standard should be shaped by the circumstances of the inherent conflict of interest." *Curry v. Eaton Corp.* 400 Fed.Appx. 51, 58 (6th Cir. 2010), citing *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1069 (6th Cir. 1998). In this case, where the Plan is both funded and evaluated by the same entity, the Court finds an inherent conflict of interest. While the Court takes this inherent conflict into consideration, the circumstances of the case control how this factor influences the arbitrary and capricious evaluation. Here, Plaintiff has not demonstrated any evidence to show that this inherent conflict actually had a controlling impact upon the Committee's decision over his benefits.

Furthermore, given the record of communications between Plaintiff and Mr. Higgins the Committee had a reasonable basis to conclude that Plaintiff was never required to move to Pittsburgh to continue his employment with PNC. The fact that he could no longer audit the capital market areas and would perform different auditing assignments in Cleveland, does not, under the Committee's reasonable interpretation of Article 3.2(b), entitle him to relief.

Therefore, after conducting a thorough review of the entire record in this case, including the arguments and evidence presented by counsel, and after taking all the factors into consideration, including the inherent conflict of interest, the Court finds that, based upon the record, the denial of benefits in this case came as a result of a deliberate principled reasoning process, was supported by substantial evidence, and was based upon a reasonable interpretation of the Plan. In light of the record before it, and given the broad discretion granted to the Committee in the plain language of the Plan, the Court simply cannot find that the decision to deny Plaintiff severance benefits was arbitrary and capricious.

## Conclusion

For the reasons set forth above, Defendant's Motion for Judgment on the Administrative Record (Docket #38) is GRANTED. This case is TERMINATED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED: _June 15, 2011_